## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ARGONAUT INSURANCE COMPANY | § | |
| | § | CASE NO. 15-34287 |
| v. | § | |
| | § | CHAPTER 11 |
| PLATINUM PARTNERS VALUE | § | |
| ARBITRAGE FUND, LP and | § | ADVERSARY NO. 15-03335 |
| TKN PETROLEUM OFFSHORE, LLC | § | |

### DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS, OR, IN THE FURTHER ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 21, 2016 AT 1:30 P.M. IN COURTROOM 404, UNITED STATES COURTHOUSE, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Active 24350194

# TABLE OF CONTENTS

Page

I.  BACKGROUND ..................................................................................................1

II.  SUMMARY OF THE ARGUMENT ..............................................................2

III.  ARGUMENT AND AUTHORITIES.............................................................3

  A.  The Court lacks subject matter jurisdiction over this lawsuit..................3

  B.  Alternatively, the Court should compel arbitration and dismiss or stay this lawsuit because this dispute is subject to a binding arbitration provision. .............5

    1.  The parties agreed to settle their disputes in arbitration. ............................6

    2.  The Federal Arbitration Act requires enforcement of arbitration agreements. .................................................................................6

    3.  The arbitration agreement in the New York Indemnity Agreement is enforceable and covers this action. ...........................................................8

  C.  Alternatively, Argonaut has failed to state a claim for breach of contract. ............9

  D.  Statement in compliance with Bankruptcy Rule 7012(b). ....................................13

IV.  CONCLUSION.................................................................................................14

CERTIFICATE OF SERVICE .....................................................................................15

Pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(1), Defendants Platinum Partners Value Arbitrage Fund, LP ("PPVA") and TKN Petroleum Offshore, LLC ("TKN" and, together with PPVA, "Defendants") move to dismiss the Original Complaint ("Complaint") of Argonaut Insurance Company ("Argonaut") because this Court lacks subject-matter jurisdiction over this lawsuit.

In the alternative, in the event the Court determines that it has jurisdiction, Defendants move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) to compel arbitration and to dismiss or stay all further proceedings pending arbitration.

Finally, in the unlikely event the Court determines that it has jurisdiction and does not compel arbitration, Defendants move to dismiss Argonaut's Complaint pursuant to Rule 12(b)(6) because Argonaut has failed to plead facts that state a breach of contract claim.

## I.    BACKGROUND

In its Complaint, Argonaut alleges that Defendants breached a May 11, 2015 indemnity agreement between Argonaut, PPVA, and TKN that relates to bonds issued to Black Elk Energy Offshore Operations, LLC ("Black Elk" or "Debtor") and TKN to secure the performance of their plugging and abandonment ("P&A") obligations (the "Texas Indemnity Agreement").   Compl. ¶¶ 4–14.   According to Argonaut, Defendants breached the Texas Indemnity Agreement because they did not respond to a demand letter that Argonaut sent on September 2, 2015, seeking release of the bonds and, in the alternative, collateral to cover the amount of the unreleased bonds.   *Id.* ¶¶ 4–5, 9–14.   Argonaut seeks an order requiring Defendants to provide collateral associated with the bonds.  *Id.* ¶ 20.

Notably absent from Argonaut's Complaint, however, is the fact that it expressly agreed to subject its disputes with PPVA and TKN to binding arbitration.  Indeed, on the same

day it entered into the Texas Indemnity Agreement, Argonaut entered into another indemnity agreement (the "New York Indemnity Agreement") with PPVA and TKN that has virtually identical in language and covers the same bonds[1] as the Texas Indemnity Agreement. *See generally* Ex. A, New York Arbitration Agreement.

In the New York Indemnity Agreement, Argonaut expressly agreed to arbitrate all disputes regarding "any aspect of the relationship" between Argonaut and Defendants, including contract disputes that relate to the interpretation and enforcement of its surety rights. *Id.* ¶ 23. The allegations in this lawsuit fall squarely within the broad arbitration clause.[2]

## II.     SUMMARY OF THE ARGUMENT

Argonaut's Complaint suffers from several fatal deficiencies.  First, it does not plead a claim within this Court's subject-matter jurisdiction.  Because Argonaut has alleged no actual effects that the resolution of this proceeding would have on the bankruptcy estate, it has failed to satisfy its burden of establishing that this adversary proceeding falls within the Court's "related to" jurisdiction under the Bankruptcy Code.

Second, even if Argonaut could establish jurisdiction, its claim still could not be adjudicated by this Court because Argonaut expressly agreed to arbitrate all disputes arising out

---

[1]     *Compare* Compl. Ex. A [Texas Indemnity Agreement] at Ex. A, *with* New York Indemnity Agreement at Ex. A.

[2]     Argonaut itself recognized as much, as evidenced by the fact that it attached to its September 2, 2015 demand letter not only the Texas Indemnity Agreement, but also the New York Indemnity Agreement.  *See* Ex. B, Sept. 2, 2015 Email.  The Court may properly consider the demand letter because it is referenced and relied upon in the Complaint.  *See* Compl. ¶ 9; *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss."); *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008) ("[U]nder Rule 12(b)(1), the court may consider any of the following:  (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.") (internal quotation marks and citations omitted).

of its relationship with Defendants.  Thus, under well-established precedent enforcing arbitration agreements, the Court must compel arbitration and dismiss or stay all further proceedings.

Finally, even if the Court determines it has jurisdiction and does not compel arbitration, the Complaint fails to plead facts stating a claim for breach of contract.  Argonaut's allegations rest on the mistaken contention that the deteriorating financial condition of the Debtor *Black Elk* triggers Argonaut's right to make a demand when that is not what the Texas Indemnity Agreement states.  Therefore, at a minimum, the Complaint must be dismissed for failure to state a claim.

### III.    ARGUMENT AND AUTHORITIES

### A.    The Court lacks subject-matter jurisdiction over this lawsuit.

The jurisdiction of bankruptcy courts to hear cases between non-debtor parties is extremely circumscribed.  "[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b) [the predecessor to 28 U.S.C. § 1334].  Judicial economy itself does not justify federal jurisdiction." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds*, *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124–25, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995).  Rather, bankruptcy jurisdiction is limited to "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

It is well settled that a proceeding "arises under" the Bankruptcy Code only when the claim is one that was created by the Code, *see World Travel Vacation Brokers, Inc. v. Bowery Sav. Bank (In re Chargit Inc.)*, 81 B.R. 243, 246–47 (Bankr. S.D.N.Y. 1987), and it "arises in" a case brought under title 11 if it would have "no existence outside of the bankruptcy." *See Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing*

*Home)*, 144 B.R. 951, 955 (Bankr. S.D.N.Y. 1992).   Here, Argonaut does not assert any claim created by the Bankruptcy Code.   Rather, its claim arises from a contractual agreement between non-debtor parties that is governed by state law and exists outside of bankruptcy.   Therefore, the only theoretical basis for jurisdiction is that the action is "related to" a pending bankruptcy case. If this action does not fall within the Court's "related to" jurisdiction, the Court lacks subject-matter jurisdiction.

Under the Fifth Circuit's standard, "[p]roceedings are 'related to' bankruptcy cases if their outcome could conceivably have any effect on the estate being administered in bankruptcy." *Fire Eagle L.L.C. v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 304 (5th Cir. 2013) (internal quotation marks omitted).   A "conceivable effect" in this context is any that "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *FDIC v. Majestic Energy Corp. (In re Majestic Energy Corp.)*, 835 F.2d 87, 90 (5th Cir. 1988) (quoting *Pacor, Inc.*, 743 F.2d at 994).

As the party with the burden of establishing subject-matter jurisdiction, Argonaut must show that the action would have a conceivable effect on the bankruptcy estate.   *Bello v. DeLape (In re DeLape)*, No. 13-34114, 2014 WL 4748735, at *1 (Bankr. S.D. Tex. Sept. 24, 2014).   Although Argonaut alleges that the action "may affect the estate of the debtor . . . because it directly relates to unfulfilled plugging and abandonment obligations" of the debtor and "to surety bonds supported by collateral in which the estate may have an interest," Compl. ¶ 1, that allegation fails to describe any actual effects that resolution of this suit would have.   It would neither satisfy nor increase the debtor's liability on its unfulfilled plugging and abandonment obligations; in fact, it would have no effect on them at all.   Similarly, the surety bonds that

Argonaut has posted on the Debtor's behalf would not be affected in any way by the resolution of the suit—Argonaut is obligated to perform under the bonds it issued on behalf of the Debtor regardless of whether the Court determines that Argonaut has rights against the Defendants.

*First Home Savings Bank v. Courtney Excavating & Construction, Inc. (In re Courtney Excavating & Construction, Inc.)*, 325 B.R. 839, 842 (Bankr. W.D. Mo. 2005), is instructive on this point. In that case, the bankruptcy court held that it could not exercise "related to" jurisdiction over a dispute between the surety that had issued bonds for the debtor-contractor's performance on construction projects and the bank that, at the debtor's request, had issued letters of credit to the surety. *Id.* The letters of credit were not assets of the estate, and the bonds themselves would not be affected by the outcome of the litigation. *Id.* To the extent that adjudication of the claim in favor of the plaintiff would create a claim for the defendant against the debtor, it would nonetheless have no conceivable effect on the estate; instead, it would determine only the identity of the creditor asserting a claim against the estate, be it the surety or the bank. *Id.*

Similarly here, a resolution of Argonaut's claim will not have any conceivable effect on the Debtor's estate. The rights and obligations of Argonaut and Defendants are independent of the Debtor's bankruptcy case or bankruptcy estate. Accordingly, Argonaut's claims do not fall within the subject-matter jurisdiction of this Court, and the Complaint should be dismissed accordingly.

**B.     Alternatively, the Court should compel arbitration and dismiss or stay this lawsuit because this dispute is subject to a binding arbitration provision.**

Even if "related to" jurisdiction were present, the Complaint still could not be adjudicated by the Court because this dispute is subject to a mandatory arbitration agreement.

Accordingly, the Court must compel arbitration and dismiss, or at a minimum stay, the proceedings pending arbitration.

1. **The parties agreed to settle their disputes in arbitration.**

The New York Indemnity Agreement between Argonaut and Defendants was executed "for the purpose of indemnifying the Surety [Argonaut] for any Bonds (as hereinafter defined) from any and all Losses (as hereinafter defined)."  Ex. A at 1.[3]  It contains a broad arbitration provision:

> The final, unappealable, and *exclusive remedy for any dispute related* to the validity, termination, enforcement, or interpretation of this Agreement, or *to any aspect of the relationship between Surety and the indemnitors* (whether under statute, tort, contract, equity, or otherwise) *shall be binding arbitration* . . . .

*Id.* ¶ 23 (emphases added).  It further requires the parties to conduct arbitration in New York, New York before a panel of three arbitrators pursuant to the International Chamber of Commerce Rules.  *Id.*

2. **The Federal Arbitration Act requires enforcement of arbitration agreements.**

The Federal Arbitration Act ("FAA") reflects the fundamental principle that arbitration is a matter of contract and should be enforced according to its terms.  Section 2 provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[3]     The Texas Indemnity Agreement and the New York Indemnity Agreement govern the same bonds at issue in this dispute.  *Compare* Texas Indemnity Agreement at Ex. A *with* New York Indemnity Agreement at Ex. A.

9 U.S.C. § 2; *see also Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (noting that FAA "requires courts" to enforce arbitrations agreements "according to their terms"). The FAA has been interpreted as a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (alterations in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The intent of the FAA is to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22.

Moreover, the FAA explicitly requires that a court "shall" enter an order directing arbitration where the parties have entered into an arbitration agreement. 9 U.S.C. § 4. The court must grant an application to compel arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (internal quotation marks omitted); *see also Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) ("[A]ll doubts concerning the arbitrability of claims should be resolved in favor of arbitration."). The Fifth Circuit has repeatedly recognized the "strong presumption in favor of arbitration." *See, e.g.*, *C.C.N. Managed Care, Inc. v. Fayez Shamieh A.M.C.*, 374 F. App'x 506, 509 (5th Cir. 2010) (per curiam). Bankruptcy courts are likewise required to enforce arbitration provisions in adversary proceedings between non-debtors.[4]

---

[4]     Discretion not to enforce an arbitration provision only exists if "(1) the proceeding derives solely from the provisions of the Bankruptcy Code; and (2) arbitration of the proceeding would conflict with the purposes of the Bankruptcy Code." *See Elite Precision Fabricators, Inc. v. Gen. Dynamics Land Sys., Inc.*, Civ. A. No. H-14-2086, 2015 WL 9302843, at *6 (S.D. Tex. Dec. 18, 2015) (quoting *In re Martinez*,

3.   **The arbitration agreement in the New York Indemnity Agreement is enforceable and covers this action.**

Defendants executed the New York Indemnity Agreement on May 11, 2015. Ex. A at 4. By its own terms, the New York Indemnity Agreement became effective upon receipt of the executed version by Argonaut or execution of the bonds. *Id.* ¶ 28.

The claims in Argonaut's Complaint fall squarely within the scope of the broad arbitration agreement in the New York Indemnity Agreement. "Broad arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil*, 139 F.3d at 1067. "If the court finds that the clause is broad, any dispute between the parties falls within the scope of the clause if it is connected with or related to the contract." *Jureczki v. Banc One Tex., N.A.*, 252 F. Supp. 2d 368, 374 (S.D. Tex. 2003), *aff'd*, 75 F. App'x 272 (5th Cir. 2003); *see also Pers. Sec. & Safety Sys., Inc. v. Motorola Inc.*, 297 F.3d 388, 392–95 (5th Cir. 2002) (holding that provision in parties' product development agreement requiring arbitration of disputes "arising out of or relating to" the agreement required arbitration of claims relating to a separate stock purchase agreement).

Here, the arbitration agreement governs all disputes relating to "any aspect of the relationship" between Argonaut and Defendants, "whether under statute, tort, *contract*, equity, or otherwise." Ex. A ¶ 23 (emphasis added). This contract dispute indisputably relates to the relationship between Argonaut and Defendants. It also relates to the New York Indemnity Agreement, which covers the same bonds at issue in the Texas Indemnity Agreement upon

---

Bankr. No. 06-34385, 2007 WL 1174186, at *4 (Bankr. S.D. Tex. Apr. 19, 2007)). The Fifth Circuit has similarly noted that "it is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b)." *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 495 (5th Cir. 2002). Neither exception is applicable here.

which Argonaut sued.  In fact, although Argonaut failed to attach the New York Indemnity Agreement to the Complaint, it attached that agreement to the demand letter that forms the basis of its breach of contract claim.  *See* Ex. B.  Argonaut's breach of contract claim cannot be decided without reference to the New York Arbitration Agreement; thus, the arbitration agreement contained therein is binding and mandates that this matter be submitted to arbitration.

In short, even if the Court holds that "related to" jurisdiction exists over this adversary proceeding, Argonaut's claims nevertheless must be dismissed in favor of arbitration.[5] *See, e.g.*, *Pennzoil*, 139 F.3d at 1067.

## C.    Alternatively, Argonaut has failed to state a claim for breach of contract.

Finally, even if the Court determines that it has subject-matter jurisdiction over this adversary proceeding, and even if the Court does not compel arbitration, it should nevertheless dismiss the Complaint because Argonaut has failed to state a claim for breach of contract.

Rule 12(b)(6) mandates dismissal of a complaint when its allegations "fail[] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To avoid dismissal, a plaintiff must have provided both fair notice of the nature of the claim and plausible factual allegations to support the claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  The plaintiff's claims "must make relief plausible, not merely conceivable, when taken as true," *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), and the Court should "not strain to find inferences

---

[5]    Because all of Argonaut's claims are subject to arbitration, the Court should dismiss them rather than stay them pending arbitration.  *See Fedmet Corp. v. M/V BUYALYK,* 194 F.3d 674, 679 (5th Cir. 1999) (affirming dismissal where all claims between the parties were subject to arbitration).

favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotation marks omitted).

Under Texas law,[6] to state a claim for breach of contract, a plaintiff must allege "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).[7]   The Complaint alleges that Defendants breached the Texas Indemnity Agreement by failing to respond to Argonaut's demands for the release of the bonds and by failing to provide, in the alternative, collateral to cover the liability of the unreleased bonds.  Compl. ¶ 13.  But the Complaint fails to allege facts indicating that Argonaut's right to make such a demand, and Defendants' concomitant obligation to respond to such a demand, were triggered.

The Texas Indemnity Agreement authorizes Argonaut to make a demand for release of the bonds when it determines, "in its sole discretion," that either "(a) the *Indemnitors*['] financial condition has been or is believed to be deteriorating; or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the

---

[6]      For purposes of this motion, Defendants assume *arguendo* that Texas law applies to the breach of contract claim pleaded in the Complaint.  Because the relevant law is the same in Texas and New York, *see infra* nn. 8–9, the Court need not engage in any choice-of-law analysis.  *See Jelec USA, Inc. v. Safety Controls, Inc.*, 498 F. Supp. 2d 945, 948 (S.D. Tex. 2007) ("The first step in employing the 'most significant relationship' approach is to decide whether the laws of the various jurisdictions conflict.  If the laws do not conflict, there is no need to resolve the choice of law problem.") (internal quotation marks omitted).

[7]      The elements of a breach of contract claim are the same under New York.  *See, e.g.*, *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) ("Under New York law, there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996))).

Bond(s)." Compl. Ex. A ¶ 11 (emphasis added).[8]  The Texas Indemnity Agreement defines "Indemnitors" as those "who sign this Agreement or whose authorized representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement." *Id.* at 1 ("Definitions").  The only signatories to the Texas Indemnity Agreement—and, thus, the only Indemnitors—are Defendants TKN and PPVA.  *Id.* at 3–4; *see also* Compl. ¶ 5 (acknowledging that the agreement identifies TKN and PPVA as Indemnitors).

The Complaint never alleges that Argonaut believes the financial condition of either Defendant "has been or is believed to be deteriorating."  Compl. Ex. A ¶ 11.  And Argonaut certainly does not plead any *facts* indicating that either Defendant has experienced a deteriorating financial condition.

Instead, the Complaint tries to rewrite paragraph 11(a), incorrectly asserting that the Texas Indemnity Agreement allows Argonaut to demand release of the bonds when it determines "that the financial condition of TKN *or Black Elk* has been or is believed to be deteriorating."  Compl. ¶ 6 (internal quotation marks omitted) (emphasis added).  It then goes on to allege facts about the deteriorating financial condition of *Black Elk*, claiming that *Black Elk's* deteriorating financial condition provided the basis for demanding the release of the bonds.  *See id.* (noting that the indemnity agreement allows Argonaut to make a demand if it determines that the financial condition of Black Elk "has been or is believed to be deteriorating"); *id.* ¶ 8 (alleging that "Black Elk's financial footing remains precarious and continues to deteriorate"); *id.* ¶ 9 ("Black Elk's precarious financial condition triggered a basis for release of the Bonds.").  But Texas law does not permit Plaintiff to change the plain language of the Texas Indemnity

---

[8]     Although the Complaint recites both subsections, its factual allegations—namely, its allegation that "Black Elk's financial footing remains precarious and continues to deteriorate," Compl. ¶ 8— reference only the deteriorating financial condition subsection.

Agreement, which only permits Argonaut to make a demand based on the deteriorating financial condition of the Indemnitors, PPVA or TKN.  *See, e.g.*, *PDVSA Servs., Inc. v. Transeguro C.A. de Seguros*, No. CIV.A. H-09-364, 2010 WL 1994195, at *6 (S.D. Tex. May 17, 2010) (instructing that, under Texas law, courts must give contractual language its plain meaning (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996))).

The fact that the Texas Indemnity Agreement gives Argonaut "sole discretion" to determine whether the conditions for making a demand have been met does not change this result.  On the contrary, Texas courts have long applied a reasonableness or good faith standard to provisions like the "sole discretion" provision, such that the party vested with such discretion cannot act arbitrarily, but rather must act reasonably and in good faith.  *See Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.*, 92 S.W.3d 477, 481 (Tex. 2002) (implying reasonableness standard where one party to a contract has the "sole discretion" to determine whether performance is satisfactory); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 659 (Tex. App.—Dallas 1992, no writ) (implying a good faith standard in a provision giving employer right "in his sole discretion" to terminate employee for unsatisfactory performance); *see also Dvorken Family Ltd. P'ship v. Martin Marietta Materials, Inc.*, No. SA-03-CA-0031 FB, 2004 WL 377537, at *10 (W.D. Tex. Jan. 6. 2004) (recognizing that lease provision giving lessees "sole discretion" to determine whether constructing a road would increase marketability of leased materials did not give lessees right to exercise their discretion arbitrarily).[9]  Thus,

---

[9]  Once again, New York law is in accord.  *See, e.g.*, *deCiutiis v. Nynex Corp.*, No. 95 Civ. 9745 (PKL), 1996 WL 512150, at *3 (S.D.N.Y. Sept. 9, 1996) ("New York courts have imposed an implied covenant of good faith to terms granting sole discretion to one party to a contract."); *id.* (noting that the implied covenant of good faith does not conflict with the party's "sole, exclusive and complete discretion" but rather requires the party "to exercise its discretion in good faith and not to act arbitrarily").

Argonaut cannot arbitrarily decide that Black Elk's allegedly deteriorating financial condition satisfied paragraph 11's deteriorating financial condition provision.

Put simply, the Complaint does not adequately plead facts in support of Argonaut's contention that it made a proper demand under the Texas Indemnity Agreement. Instead, the Complaint appears to rest on the mistaken contention that the deteriorating financial condition of *Black Elk* triggers Argonaut's right to make a demand. As such, the Complaint does not adequately plead a breach of the Texas Indemnity Agreement and should be dismissed for failure to state a claim. *See, e.g.*, *Anderson v. J.P. Morgan Chase*, No. CIV.A. H-13-1448, 2013 WL 6524630, at *4 (S.D. Tex. Dec. 11, 2013) (dismissing a breach of contract claim under Rule 12(b)(6) where plaintiffs did "not allege[ ] any facts in support of an essential element of a breach of contract claim), *opinion adopted* Jan. 1, 2014; *Vikon Int'l, Inc. v. Sensorlogic, Inc.*, No. CIV A 3:08-CV-1942-L, 2009 WL 2474669, at *5 (N.D. Tex. Aug. 12, 2009) (dismissing breach of contract claim because plaintiff "ha[d] not alleged sufficient facts that, if true, would establish a claim for breach of contract").

**D.      Statement in compliance with Bankruptcy Rule 7012(b).**

Pursuant to Federal Rule of Bankruptcy Procedure 7012(b), and subject to the Defendants' subject-matter jurisdiction argument, Defendants do not to consent to this Court's hearing and determining this proceeding or entering orders or judgments that would otherwise be permissible with such consent of the parties under 28 U.S.C. § 157(c)(2). Defendants' filing of this pleading and litigation of this pleading or any other conduct in this proceeding should not be construed as express or implied consent that would give this Court authority to rule on any matters pursuant to 28 U.S.C. § 157(c)(2). Defendants contend that this Court cannot enter final orders or judgments in this proceeding that would be inconsistent with Article III of the United States Constitution.

To the extent that this Court determines it has subject-matter jurisdiction over this proceeding, this proceeding is a non-core proceeding.

## IV.   CONCLUSION

For the foregoing reasons, Defendants request that this Court dismiss this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(1) because the Court lacks subject-matter jurisdiction over this proceeding.   In the alternative, in the event that this Court finds that it has jurisdiction over this proceeding, Defendants request that this Court compel arbitration and dismiss, or stay all further proceedings pending arbitration pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3).   In the alternative, in the event that this Court finds that it has jurisdiction and does not compel arbitration, Defendants request that Argonaut's Complaint be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a breach of contract claim.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ Danny David*
   Danny David, State Bar No. 24028267
   Amy Pharr Hefley, State Bar No. 24046046
   One Shell Plaza
   910 Louisiana
   Houston, Texas 77002
   713.229.4055
   713.229.2855 (facsimile)
   danny.david@bakerbotts.com
   amy.hefley@bakerbotts.com

   Omar J. Alaniz, State Bar No. 24040402
   2001 Ross Avenue
   Dallas, Texas 75201
   214.953.6593
   214.661.4593 (facsimile)
   omar.alaniz@bakerbotts.com

ATTORNEYS FOR DEFENDANTS PLATINUM PARTNERS
VALUE ARBITRAGE FUND, LP AND
TKN PETROLEUM OFFSHORE, LLC

## CERTIFICATE OF SERVICE

   I hereby certify that a true and correct copy of the forgoing document was served by electronic mail on the 19th day of February, 2016 to all counsel of record as follows:

   Paul J. Goodwine
   Looper Goodwine P.C.
   650 Poydras Street, Suite 2400
   New Orleans, Louisiana 70130
   *pgoodwine@loopergoodwine.com*

   ATTORNEYS FOR PLAINTIFF

      */s/ Danny David*
      Danny David